[Cite as *State v. Malone*, 2015-Ohio-3436.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 14 CA 89 |
| SHAWN MALONE | |
| | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                 Pleas, Case No.  13 CR 610


JUDGMENT:                        Affirmed


DATE OF JUDGMENT ENTRY:          August 24, 2015


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KENNETH W. OSWALT                         MICHAEL R. DALSANTO
PROSECUTING ATTORNEY                      3 South Park Place
PAULA M. SAWYERS                          Suite 220
ASSISTANT PROSECUTOR                      Newark, Ohio  43055
20 South Second Street, 4th Floor
Newark, Ohio  43055

*Wise, J.*

{¶1}    Defendant-Appellant Shawn G. Malone appeals his conviction following a jury trial entered in the Licking County Court of Common Pleas on one count of Gross Sexual Imposition.

{¶2}    Appellee is the State of Ohio.

<u>STATEMENT OF THE CASE AND FACTS</u>

{¶3}    On or about October 5, 2013, L.M. (d.o.b. 9/13/00) disclosed that her mother's boyfriend, Shawn Malone, hereinafter "Appellant", had been sexually abusing her for the past several months. (Supp. T. at 10). She disclosed that this occurred on more than one occasion and consisted of digital penetration and fondling. Detective Steven Vanoy of the Newark Police Department was assigned to investigate the allegations. (Supp. T. at 10).

{¶4}    Appellant voluntarily agreed to accompany Detective Vanoy to the Newark Police Department to discuss the matter. (Supp. T. at 11). Detective Vanoy informed Appellant that he could not force him to come down to the station and talk to him. *Id.* Appellant drove himself to the Newark Police Department for this meeting. (Supp. T. at 11-12). Upon arriving at the Newark Police Department, Detective Vanoy tape-recorded his conversation with Appellant. (Supp. T. at 12). Appellant was again advised by Detective Vanoy that he could leave at any time. Detective Vanoy made mention that he was aware that Appellant had to be at work in the early afternoon of that day, and they would conclude the interview in time for him to make work. (Supp. T. at 12-13).

{¶5}    During the interview, Detective Vanoy's office door was left open. (Supp. T. at 13). The open doorway was immediately to the right from where Appellant was

sitting and was unobstructed. (Supp. T. at 1314). Detective Vanoy informed Appellant that if at any time he wanted to leave, Detective Vanoy would escort him out of the office. (Supp. T. at 14). Appellant agreed to speak to Detective Vanoy and admitted to sexually touching L.M. (Supp. T. at 16). After receiving admissions from Appellant, Detective Vanoy informed Appellant that he was under arrest. (Supp. T. at 16). At that time, Appellant was read his Miranda rights. Appellant then continued to speak to Detective Vanoy. (Supp. T. at 15).

{¶6} On October 31, 2013, the State filed an indictment against Appellant charging him with one count of Rape and one count of Gross Sexual Imposition, felonies of the first and third degree, respectively.

{¶7} On March 20, 2014, Appellant filed a Motion to Suppress seeking to suppress statements he made to investigating officer Detective Vanoy. The State filed a memorandum in opposition on March 25, 2014, and on April 1, 2014, the case proceeded to an evidentiary hearing.

{¶8} After the hearing, both the State and Appellant filed post-evidentiary briefs.

{¶9} By Judgment Entry filed June 13, 2014, the trial court denied Appellant's motion.

{¶10} On September 24, 2014, the case proceeded to jury trial.

{¶11} At trial, the State introduced into evidence an audio recording of the interview. (Trial T. at 243).

{¶12} Following deliberations, the jury found Appellant guilty of one count of G.S.I. but deadlocked on the Rape count. (Trial T. at 361).

**{¶13}** The State elected not to re-try Appellant on the rape charge. (Sent. T. at 3).

**{¶14}** On October 2, 2014, the case proceeded to sentencing, at which time the trial court sentenced Appellant to serve a prison sentence of five (5) years mandatory time on the G.S.I. count.

**{¶15}** Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

**{¶16}** "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED INTO EVIDENCE INCULPATORY STATEMENTS TAKEN IN VIOLATION OF *MIRANDA V. ARIZONA.*

**{¶17}** "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADMITTED INTO EVIDENCE INVOLUNTARILY GIVEN INCULPATORY STATEMENTS MADE BY THE APPELLANT AT TRIAL.

I., II.

**{¶18}** In his First and Second Assignments of Error, Appellant argues the trial court erred in not suppressing the inculpatory statements he made during his interview with Detective Vanoy. We disagree.

**{¶19}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 486 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the

trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993).  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.  *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger*.  As the United States Supreme Court held in *Ornelas v. U.S.,* 517 U.S. 690, 116 S.Ct. 1657, 1663 (1996), ". . .  as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶20}  In the case *sub judice*, Appellant argues that his statements were taken in violation of *Miranda v. Arizona* (1966), 384 U.S. 436 and were involuntarily given.

{¶21}  In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda, supra.* If that condition is established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. *Id.,* at 476.

{¶22} A custodial interrogation occurs when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way and a law enforcement officer questions that person. *Id.* "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be

used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

{¶23} In *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Court offered the following description of the *Miranda* custody test:

{¶24} Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. 516 U.S., at 112, 116 S.Ct. 457 (internal quotation marks omitted). *Accord, Yarborough v. Alvarado,* 541 U.S. 652, 653, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). The police and courts must "examine all of the circumstances surrounding the interrogation," *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), including those that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave," *Id.,* at 325, 114 S.Ct. 1526. However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough,* 541 U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938. *Accord, State v. Mason,* 82 Ohio St .3d 144, 153, 1998–Ohio–370, 694 N.E.2d 932 (1998); *State v. Gumm,* 73 Ohio St.3d 413, 429, 1995–Ohio–24, 653 N.E.2d 253 (1995).

{¶25} In the case at bar, the following factors weigh against a finding that Appellant was in custody: Appellant drove himself to the police station voluntarily in his

own vehicle. There is no suggestion in the record that Appellant was threatened if he did not appear. Upon his arrival at the police station, Detective Vanoy informed Appellant that he was not under arrest and that the conversation was voluntary. The door to Det. Vanoy's was left open during the interview. The interview lasted only ninety (90) minutes. Appellant, having a criminal history, had prior experience with the legal system and Miranda warnings.

{¶26} Appellant, while acknowledging that Det. Vanoy informed him that he was free to stop the interview and leave at any time, argues that he did not feel he was at liberty to do so. Appellant claims that because he was on parole at the time, he was subject to significant additional prison time if he failed to cooperate. (Trial T. at 279-280). He further argues that Det. Vanoy's statement that he "needed to speak with [Appellant]" was not really a request and weighed against the statement that he was "free to leave". Further, he argues that he did not feel free to leave because when he went to the police station, it was after hours and they entered through a gate and then proceeded through two sets of locked doors.

{¶27} In *State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506 (2003), the Ohio Supreme Court noted "[i]t is well established that at a suppression hearing, 'the evaluation of evidence and the credibility of witnesses are issues for the trier of fact.' *State v. Mills* (1992), 62 Ohio St.3d 357, 366 citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The trial court was free to find the officers' testimony more credible than appellant's. We therefore defer to the trial court's ruling regarding the weight and credibility of witnesses. *State v. Moore* (1998), 81 Ohio St.3d 22, 31." *Brown* at 55, 2003–Ohio–5059 at ¶15.

{¶28} We conclude that a reasonable person in Appellant's position during the interview would have understood that he was free to walk away from the questioning by the officer and leave. *State v. Mason,* 82 Ohio St.3d 144, 153–154, 1998–Ohio–370 (1998).

{¶29} Appellant also argues that his statements were involuntary because Det. Vanoy made deceptive statements to him.

{¶30} "The issues of whether a confession is voluntary, and whether a suspect has been subjected to custodial interrogation so as to require *Miranda* warnings, are analytically separate issues. The due process clause continues to require an inquiry, separate from custody considerations, concerning whether a defendant's will was overborne by the circumstances surrounding the giving of his confession." *State v. Jackson,* 2d Dist. Greene No. 02CA0001, 2002–Ohio–4680, ¶ 19, citing *Dickerson v. United States,* 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)

{¶31} This due process test takes into consideration the totality of all the surrounding facts and circumstances, including the characteristics of the accused and the details of the interrogation. Factors to be considered include the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threats or inducements. *State v. Edwards* (1976), 49 Ohio St.2d 31, 358 N.E .2d 1051.

{¶32} Here, Appellant does not assert that he was physically deprived or mistreated while at the police department, nor does the record reveal any type of physical deprivation. Moreover, there is no evidence that police subjected Appellant to

threats or physical abuse, or deprived him of food, sleep, or medical treatment. *See State v. Cooey,* 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 908 (1989).

**{¶33}** Instead, Appellant argues that his statements were coerced by deceptive statements made to him by Det. Vanoy regarding Appellant being able to leave the police station and go to work later that day.

**{¶34}** The use of deception does not make an interview coercive and does not necessarily violate due process. *State v. Steele,* 138 Ohio St.3d 1, 2013–Ohio–2470, citing *State v. Wiles,* 59 Ohio St.3d 71, 81, 571 N.E.2d 97 (1991).

**{¶35}** "Deception is a factor bearing on voluntariness, but, standing alone, does not establish coercion * * *." *State v. Singleton,* 2d Dist. Montgomery Nos. 17003, 17004 (March 31, 1999), citing *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1999). (Other citations omitted.) *See, also, State v. Brown,* 100 Ohio St.3d 51, 2003–Ohio–5059.

**{¶36}** In Ohio, as in other jurisdictions, deception in interrogation is only one factor in assessing voluntariness.

**{¶37}** "Use of deceit by the interrogating police officers and misrepresentations made to the suspect about the evidence police possess do not per se render a confession involuntary. Rather, deceit or a misrepresentation about the evidence is but one factor bearing on voluntariness." *State v. Reeves,* 2d Dist. Greene No. 2002–CA–9, 2002–Ohio–4810, ¶ 8.

**{¶38}** After reviewing the totality of the circumstances, we find no evidence that Appellant's statements or the waiver of his rights were not made voluntarily. The record is insufficient to establish that Appellant's "will was overborne" by the officer's actions in

coming to his home to investigate this crime and in having Appellant come to the police station to make a statement.

**{¶39}** We find that the trial court did not err in failing to suppress Appellant's oral statements. Appellant's Assignments of Error are overruled

**{¶40}** For the foregoing reasons, the judgment of the Court of Common Pleas of Licking County , Ohio, is affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

JWW/d 0812